Call the next case, Patterson Drywall v. Workers' Compensation Comm'n, 4090598. Counsel, please. May it please the Court, Counsel. My name is Emily Miller. I represent the respondent appellant in this case, Patterson Drywall. The issue presented today on appeal is whether the Illinois Workers' Compensation Commission decision in this case, awarding Mr. DeGroote prospective medical treatment related to his left index finger, is against the manifest weight of the evidence. It is my client's position that there is insufficient factual evidence in the record to support a decision causally linking the current condition of Mr. DeGroote's left index finger to his work accident back on May 30, 2002. And I know that in our briefs we pretty much agree on the facts as this case sets forth. I'd just like to point out for you the factual evidence I rely on to argue that the Commission's decision was against the manifest weight of the evidence. First, I think we have to look at the fact that there's actually no medical evidence in the record causally connecting Mr. DeGroote's current condition to his work accident. Mr. DeGroote primarily sought treatment with Dr. Neumeister. Dr. Neumeister gave his deposition in this matter in December of 2006. At the time Dr. Neumeister gave his deposition, he had not seen Mr. DeGroote since April of 2005. In response to some questioning from Mr. DeGroote's counsel, Dr. Neumeister testified that as of December of 2006, he was not in a position to determine Mr. DeGroote's current condition or his need for any further treatment as he had not seen him in over 20 months since April of 2005. Dr. Neumeister did give an opinion that the treatment he had rendered to Mr. DeGroote up to April of 2005 was related to his work injury. However, that opinion does not change Dr. Neumeister's testimony that he wasn't in a position to determine the current status of Mr. DeGroote's finger at the time of his deposition. So? The burdens on the petitioner... How does it affect the commission's decision? There's... What did they order? Excuse me? What did the commission order? The commission ordered prospective medical treatment... Specific prospective medical or death that might be determined by Dr. Neumeister? That as well as a specific diagnostic procedure of surgery on his left index finger. Yeah, so Dr. Neumeister testifies that the condition of his finger that he treated was causally related to the work accident on May the 20th and then turns around and says he would need to re-examine the finger prior to determining what further alternatives were necessary. And the commission says, you do your future diagnostic test and you pay for any further treatment Dr. Neumeister says is necessary. And Dr. Neumeister pooh-poohs the opinions of Dr. Koo that the guy somehow injured his finger playing baseball. Correct. He does disagree with the opinion of Dr. Koo and he does still indicate that the surgery would be a reasonable medical procedure from a certain group. Our point is that there's nothing as of the time of hearing linking either from Dr. Neumeister or Dr. Koo or in the medical records themselves linking that continued need for that procedure to the work accident. But it's a 19V. Correct. When it goes back to the commission, you have every right in the world to argue that the medical expenses that they're trying to get you to pay were not reasonable and weren't necessary. You have a forum to argue that. It's going back. Back before the arbitrator you mean? Yes, of course. Correct. So why are you arguing it now? We don't know. We don't even know what he's going to say he needs. That would be with regard to any new treatment. We've been ordered through the commission's decision to pay for the diagnostic treatment and any further treatment. Recommended by Dr. Neumeister. Right. The issue here is specifically the diagnostic procedure that's been ordered by the commission. Neumeister testified that he needed to reexamine the man's finger, didn't he? He did, but he did not give any testimony regarding the current condition of the finger or whether that current condition was related to the work accident. The only opinion he's given in this case is that, yes, I saw him three times. No, I haven't seen him since April of 2005. I can't testify as to what his current condition is. I recommended the surgery back in April of 2005. He may still need that. He may not still need that. But there's nothing linking that to the work accident. What's the diagnostic test that they have to pay for? Excuse me? What diagnostic treatments do they have to pay for? Does my client have to pay for them? Yeah. What do you have to pay? What diagnostic test do you have to pay for that's been ordered by the commission? It's the diagnostic arthroscopy on the finger. It's for the sagittal band. And what's that arthroscopy going to tell us? Hopefully whether there would be any problem with the finger, mainly that sagittal band there. But we right now have a finding by the commission from Dr. Neumeister that it's causally related to work. Am I correct? The commission has found that his need for the diagnostic procedure is causally related to the work injury. Okay, so we found a work injury, right? We're not disputing that he had a work injury. There's no dispute here that he had a work injury, that that injury continued for some time after that. We're disputing the continued treatment at this point for the diagnostic procedure based upon the deposition testimony of Dr. Neumeister, the opinion of Dr. Koo, and there are some very large gaps in his medical treatment from the time of his accident to the time of the hearing back in 2007. Can you clarify another point? Dr. Koo explained playing softball with the glove could have impacted on the condition. You also raised the issue of a preexisting injury that he broke the same finger sometime before the May 30, 2002 accident. What are you alleging with regard to those matters? I think in this case you have to specifically look at the record as a whole. If you look at Dr. Koo's opinion, it's her opinion that he hyperextended his finger when he injured it at work, that that condition had resolved by February of 2004. It's her opinion that after February of 2004, the continued problems that he had with his finger were related specifically to degenerative or arthritic changes resulting from the prior fracture that he had. The prior fracture prior to May 30, 2002. Correct, yes. All right, let me ask you this. Even if that, assuming for the sake of the argument, is true, would it also be true that the aggravation of the claimant's preexisting condition would not preclude an award if the injury in May would have aggravated or accelerated that condition? That's absolutely true. If there was evidence that the work injury had aggravated his preexisting condition in his left index finger. However, the record again in this case is devoid of any opinion as far as an aggravation is concerned either. Well, you can talk about Koo. You can talk about Neumeister. What about the claimant's testimony himself that he was injury-free, pain-free for years before this accident? Doesn't that bear in the finding of the commission? Can't they consider the claimant's own testimony? I don't think you can. When you look at the gaps in his treatment, the fact that he continued working, he continued to be active playing softball the entire time. I think if you look at that cumulatively. They have to reject his testimony. That's what you're saying is a matter of law? They can't consider it? I mean, they can consider it, but I think it needs to be given its due weight given the other evidence in the record in this case. What is the other evidence? We agree that he injured himself. Correct. The other evidence would be the testimony of Dr. Neumeister, no specific testimony from him linking his current condition to his work accident. Dr. Koo's opinion that... Which Dr. Neumeister is saying, I've got to take a look at him, right? Yes. He's saying, I can't determine right now when I give my deposition testimony. I can't say what's wrong with his finger. I can't say what he needs. I recommended surgery for his finger back in April of 2005. I would need to look at him. Dr. Koo, who was retained by my clients who examined Mr. DeGruy, is saying he breached maximum medical improvement with regard to the work injury in February of 2004. These continuing problems he has are related to aggravation of degenerative changes from playing softball from him being active. We also need to look at the gaps in his treatment. There are significant gaps in this gentleman's treatment, ranging from seven months to almost two years at one point. At the time of hearing in April of 2007, he hadn't sought treatment for his finger since April of 2005. At that time, he underwent an injection that Dr. Neumeister had recommended to try and discern if there was some kind of sagittal injury. He never followed back up. We don't even know what the results of the injections that he had were. Did they benefit him? Did they not benefit him? We don't know because he never went to the doctor. You know, I've got to get back to the question I originally asked you. I don't understand what we're doing here. An employer is responsible for paying all the medical expenses for an injured employee. This was a 19B. It's been remanded back to the arbitrator. The only thing that it says in this opinion, as I can figure out, is that you're responsible for paying liable for the payment of any prospective medical treatment recommended by the petitioner's treating physician. They didn't tell you you had to fix a broken arm. They didn't tell you you had to for a specific eye. Whatever the treating physician recommends, you're going to be responsible for it. But that's going to go back before an arbitrator. And you're going to have an opportunity to turn around and argue to that arbitrator, that treatment was unnecessary. It wasn't related to the injury that's causally connected to his work. And you get a full trial on that. Why are we arguing that for now? Because he hasn't proved the causal connection of the current condition. He hasn't had the treatment. Right, but they've been ordered to pay for that treatment. At this point, we've been ordered to pay at a minimum. Well, what did you suggest? You don't have to pay for any treatment at all? For this man? Yes, it's our position. In the future? Correct. Why? Based upon Dr. Koo's opinion. Dr. Koo's opinion was poo-pooed by Dr. Neumeister? Neumeister, neither the commissioner or the arbitrator put any credence in Dr. Koo's opinion. Neumeister says it's causally related. What I treated him for was causally related. And the only thing, as I understand it, is they're sending it back down and saying, you know, if a treating physician says he needs additional treatment, pay for it. Right. The only opinion Dr. Neumeister gave with regard to causal connection was related to when he saw him two years prior. Yeah. There's nothing linking his current condition of ill-being and his left index finger to his work accident. That's the basis of our argument. Regardless of what medical treatment he might need or what's been ordered or what's been recommended at this point, it's our position that he did not... You want us to decide he doesn't need any future medical treatment before he ever gets the treatment? No. I believe that the decision that the commission made, which is that his current condition of ill-being is causally connected to his work injury, is against the manifest weight of the evidence in this case. We look at the record as a whole. You're saying if we agree with that, then you're not going to have to fight a battle in the future. That's basically what you're saying. Correct. You're taking your stand now. Correct. Absolutely. There's a difference between diagnostic tests and treatment, right? I mean, are these... A diagnostic test is considered treatment. It is? Yeah. I mean, any treatment recommended, if you're trying to treat an injury, a diagnostic treatment is concerned with that underlying condition. A diagnostic test. The procedure that they've recommended for him is considered a diagnostic test, just like an EMG, an NCD for a carpal tunnel plane. Thank you, Counselor. Thank you. Counselor, please. Good morning again, Counselors. My name is Miller. I'm with the Police Department. My name is Don Woods. I'm with the Law Offices of Mark Lee. Representative Dennis DeGroote, who is the claimant below and is the appellant for this court. Your Honors, I've had the chance to review the briefs, reply briefs, listen to Ms. Miller's valiant oral argument today, and unfortunately I'm willing to just stand on my briefs in this case. I'll waive oral arguments, stand on my briefs, and allow the decision to come down. I have only one question for you. Yes, sir. You don't dispute the fact that when this goes back before the arbitrator, they have the right to contest the reasonableness and necessity of future medical treatment. No contest. Thank you, Counselor. Any rebuttal? Thank you, Counselor. The court will take the matter under advice of this position. The hearing is recessed for a short period.